IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SASALADINE JONES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 12-6166 |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| et al. | : | |

## REPORT AND RECOMMENDATION

**JACOB P. HART**
**UNITED STATES MAGISTRATE JUDGE**

**April 2, 2013**

This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by

Sasaladine Jones, who is currently incarcerated at the State Correctional Institution located in

Dallas, Pennsylvania. For the reasons that follow, I recommend that the petition be denied.

## I.     FACTS AND PROCEDURAL HISTORY

On June 15, 2007, following a five day trial, a jury found Jones guilty of first degree murder,

carrying a firearm without a license, and possession of an instrument of crime ("PIC").  On July

27, 2007, he was sentenced to life in prison for the murder conviction and an aggregate,

consecutive term of six to 12 years in prison for the firearm and PIC convictions.  The Superior

Court summarized the facts of the case as follows:

> On the afternoon of May 16, 2005, the victim, William Warthem ("Warthem"), was
> employed at Sunny's Diner in Philadelphia.  A patron, named "Ed," went to the
> bathroom and when he returned he discovered that his $2,000.00 ring was missing.  Ed
> confronted Warthem about the ring.  Warthem denied taking the ring.  Ed then asked
> Warthem if he had seen anyone else entering the bathroom and Warthem answered that
> he had seen a man in a brown dickie set in the bathroom.  Appellant had been wearing a
> brown dickie set that day.
>
> Later that day, Ed and a friend of his named "Banger" returned to Sunny's Diner and
> spoke with Appellant and Ronald Hall outside the diner.  These four then called for

Werthem to come out.  After some hesitation, Warthem and his cousin Alfonso Lanier ("Lanier"), who was also employed at the diner, came out to talk with the four men. Appellant accused Werthem of telling Ed that Appellant had stolen the ring.  Warthem repeated that he had only said that Appellant had come out of the bathroom.  When Lanier turned to re-enter the diner, he heard a gunshot and turned to see Appellant holding a silver gun and Warthem with a wound to his head.  Lanier saw Appellant entering a green jeep or minivan and wrote down the license plate.  The license plate belonged to a green minivan registered to Appellant

The medical examiner testified that Warthem died from a gunshot wound to the head.

On the last day of trial, June 15, 2007, Appellant stated that he wished to represent himself for closing arguments and the trial court permitted him to do so.  When the jury found Appellant guilty, Appellant had an outburst in court, throwing items from the counsel table, cursing, and yelling at people in the gallery.  The trial court removed Appellant from the courtroom.

When Appellant was sentenced on July 27, 2007, Appellant testified that he did not wish his trial counsel to speak on his behalf.  After sentencing, while the trial court was explaining Appellant's appeal rights to him, Appellant began cursing and continued to curse when asked if he wished his trial counsel to file a direct appeal on his behalf.

Appellant did not file a direct appeal from his judgment of sentence.

On June 10, 2009, appellant filed a pro se PCRA petition.  Counsel was appointed and, on December 11, 2009, an amended PCRA petition was filed by appointed counsel.  On April 23, 2010, Appellant's PCRA petition was dismissed as untimely filed.  Appellant did not appeal the dismissal of this PCRA petition.

Pennsylvania Superior Court Opinion, 8/6/12 (quoting the PCRA Court Opinion, 1/12/12, at 1-3).

On August 3, 2010, Jones filed a second PCRA petition.  The PCRA court once again dismissed this petition as untimely filed.  Jones filed an appeal of the dismissal in the Pennsylvania Superior Court. On August 6, 2012, the Pennsylvania Superior Court affirmed the denial of his second PCRA petition.

On October 31, 2012, Jones filed the instant habeas corpus petition.  He claims

that his attorney abandoned him on appeal. Respondents argue that the petition is untimely and

must be dismissed. Upon consideration of the record, this Court agrees.

## II.    DISCUSSION:

Timeliness:

Under the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), enacted

April 24, 1996:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by
> a person in custody pursuant to the judgment of a State court. The limitation period shall
> run from the latest of -
>
> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such review.
>
> (B) the date on which the impediment to filing an application created by the State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could
> have been discovered through the exercise of due diligence.

28 U.S.C. § 2244 (d)(1) (1996).

Most commonly, the start date is the date on which the judgment became final. 28

U.S.C. 2244(d)(1)(A). In the case at bar, petitioner's conviction became final on August 27,

2007, when his time for filing a direct appeal to the Pennsylvania Superior Court lapsed. See

Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999) (judgment becomes final at the

conclusion of direct review or the expiration of time for filing such review, including the time

for filing a petition for writ of certiorari in the United States Supreme Court); Pa. R.A.P. 903(a)

(time for appeal to Superior Court is 30 days).   He therefore had one year from that date, or until August 27, 2008 to file a federal habeas petition.  The instant petition was filed on October 31, 2012, over four years after the federal limitations period had lapsed.

Statutory Tolling:

The statute, however, also creates a tolling exception, which notes that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244 (d)(2).  A "properly filed application" is "one submitted according to the state's procedural requirements, such as the rules governing time and place of filing."  Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998).  Accordingly, "[w]hen a post conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of 28 U.S.C. § 2244(d)(2)."  Pace v. DiGuglielmo, 541 U.S. 408, 125 S. Ct. 1807 (2005) (quotations omitted); see also Merritt v. Blaine, 326 F.3d 157, 165-66 (3d Cir. 2003) (if a petitioner files an out-of-time application and the state court dismisses it as time-barred, then it is not deemed to be a "properly-filed application" for tolling purposes).  To determine whether or not a state PCRA petition is properly filed, "'we must look to state law governing when a petition for collateral relief is properly filed' and 'defer to a state's highest court when it rules on an issue.'"  Merritt, 326 F.3d at 165 (quoting Fahy v. Horn, 240 F.3d 239, 243-244 (3d Cir. 2001)).

In this case, Jones filed his first PCRA petition on June 10, 2009, almost two years after his judgment became final.  He also filed a second untimely petition on August 3, 2010.  Jones' PCRA petitions were both dismissed as untimely and therefore were not "properly filed" petitions which could act to toll the federal limitations period.  Id.  Furthermore, neither of his

PCRA petitions could act to toll the federal limitations period because his federal limitations period had already lapsed almost a year before Jones filed his first PCRA petition. Accordingly, he is not entitled to statutory tolling.

Equitable Tolling or Alternate Start Date:

The statute of limitations in the AEDPA is subject to equitable tolling, which is proper only when the "principles of equity would make [the] rigid application [of a limitation period] unfair." Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998). The petitioner "must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient." Id. at 618-19 (internal quotation omitted). The Third Circuit has set forth three circumstances permitting equitable tolling: (1) if the defendant has actively misled the plaintiff; (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) if the plaintiff has timely asserted his rights, but has mistakenly done so in the wrong forum. Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." Fahy v. Horn, 240 F.3d at 244 (citing cases). To otherwise apply equity would "loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).

Jones claims that he thought his trial counsel had filed a direct appeal on his behalf. However, the record reflects that he did not ask his attorney to file an appeal on his behalf. After informing the state court that he wanted to represent himself and that he no longer wanted his

attorney to represent him, the trial court advised him of his appellate rights on the record as

follows:

> Court: I want to advise you of your appeal rights.  I believe you have been given
> a written statement of your rights to appeal.  This is very important…
> Since you are representing yourself, it is very important that you have that
> statement.  That is a written statement of your rights to appeal…I wish
> you sign three copies of that statement…The reason I'm asking you to
> sign three copies, one is for you to have, one is for me to have and one is
> for the court record.  Those are your appeal rights.  Do you understand
> that if you wish to file an appeal, you have to do so within 30 days.  Do
> you understand that?
> Jones: Yes
> Court: There are other detailed instructions that I'm giving you in writing so that
> you will be on notice of your appeal rights…Do you wish Mr. Gottlieb to
> file an appeal for you?
> Jones: I don't even give a fuck.  Fuck you.  Fuck everybody.  Fuck y'all.

(N.T. 7/27/07 at 22).

The record reflects that he was representing himself and that even when he was specifically

asked about an appeal, he did not instruct his attorney to file an appeal on his behalf.

Jones also claims that once he discovered that his attorney had not filed a direct appeal he

filed a PCRA petition.  However, even according to his own claim, he contacted the state court

and made contact with the judge's law clerk on December 17, 2007.  This was within the one

year time frame, but he still did not file his PCRA petition until June 10, 2009 and did not file

this federal habeas petition until October 31, 2012.  Even if Jones believed that his attorney filed

an appeal on his behalf, which is contrary to the record, he admits to finding out that no such

appeal had been filed on December 17, 2007.  However, he waited another year and a half to file

his first PCRA petition and almost five years to file this federal habeas petition.  Jones has not

demonstrated that he acted with due diligence in bringing his claims.  There is no indication, that

he was actively misled by the defendant, that he was prevented from filing this petition, or that

he mistakenly filed in the wrong forum. Furthermore, while he is not entitled to an alternate start date, even an alternate start date would not make this petition timely. As Jones has not offered any explanation for failing to timely file, we decline to exercise our equitable tolling powers and, thus, dismiss his entire petition as untimely.

Therefore, I make the following:

## R E C O M M E N D A T I O N

AND NOW, this   2nd   day of April, 2013, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be DENIED. There has been <u>no</u> substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability. The petitioner may file objections to this Report and Recommendation. <u>See</u> Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE