IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SASALADINE JONES                :       CIVIL ACTION
                                :
        v.                      :
                                :
COMMONWEALTH OF                 :
PENNSYLVANIA, et al.            :       NO. 12-6166

ORDER

AND NOW, this 15th day of October, 2013, upon consideration of petitioner Sasaladine Jones's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket entry # 1), our Order referring this matter to the Honorable Jacob P. Hart for a report and recommendation (docket entry # 2), defendants' response (docket entry # 10), Judge Hart's report and recommendation ("R&R") (docket entry # 11), and Jones's objections thereto (docket entries # 12 & 13), and the Court finding that:

(a) A jury convicted Jones of first degree murder, carrying a firearm without a license, and possession of an instrument of crime on June 15, 2007, Commonwealth v. Jones, No. 2849 EDA 2011 (Pa. Super. Ct. Aug. 26, 2011), Comm. Resp. Exh. at 1-2 (quoting PCRA court findings);

(b) Jones received a sentence of life in prison and an aggregate, consecutive term of six to twelve years in prison for

the firearm and possession convictions, Pet. at 1; R&R at 1, and his conviction became final on August 27, 2007, when his time for filing a direct appeal to the Pennsylvania Superior Court elapsed, R&R at 3 (citing Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999));

(c) He filed two petitions in the courts of the Commonwealth pursuant to the Post-Conviction Relief Act ("PCRA"), on June 10, 2009 and August 3, 2010, see Commonwealth v. Jones, No. 2849 EDA 2011 at 3;

(d) Because a petitioner must file a PCRA petition within one year of the date on which his judgment becomes final, see 42 Pa. Cons. Stat. Ann. § 9545(b), these petitions were untimely, and the PCRA court dismissed them as such, see Commonwealth v. Jones, No. 2849 EDA 2011 at 6 (affirming the PCRA court's order dismissing Jones's PCRA petition without a hearing);

(e) Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), petitioners must file actions for habeas corpus relief within one year of the date on which their convictions become final, see 28 U.S.C. § 2244(d)(1), and because

Jones's conviction became final on August 27, 2007, the deadline for filing a habeas corpus petition was August 27, 2008;

(f) Jones filed the instant action on October 31, 2012, over four years after the deadline, and absent a basis for tolling, his claim is thus time-barred;

(g) The habeas statute does contain a provision for statutory tolling, according to which, "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection", 28 U.S.C. § 2244(d)(2) (emphasis added);

(h) Judge Hart found, and we agree, that because Jones's PCRA petitions were untimely, they were not "properly filed" and thus cannot provide a basis for statutory tolling, see R&R at 5-6 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) for the proposition that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter'" for purposes of § 2244(d)(2)");

(i) AEDPA's one-year time limit is also subject to equitable tolling where "principles of equity would make the rigid application of a limitation period unfair", Miller v. New

3

Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998) (internal alterations and quotations omitted);

(j) In order to claim equitable tolling, a petitioner must show "that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient", id. at 618-19 (internal alterations omitted);

(k) As our Court of Appeals explained in Jones v. Morton, 195 F.3d 153 (3d Cir. 1999), equitable tolling is appropriate where the party asserting it has (1) been actively misled, (2) "'in some extraordinary way' been prevented from asserting his rights," or (3) "timely asserted his rights mistakenly in the wrong forum", id. at 159;

(l) Jones asserted in his habeas petition, and he reiterates in his objections, that he thought his trial counsel had filed an appeal on his behalf, see Pet. at 3; R&R at 5; Obj. at 2-3;

(m) Judge Hart noted that Jones had informed the state court that he wanted to represent himself and did not want his appointed attorney to represent him, see Commonwealth v. Jones, No. 2849 EDA 2011 at 2; see also N.T. 7/27/07 at 3-5;

4

(n) As Jones's trial counsel, Jay Gottlieb, explained during Jones's sentencing, Jones had taken the stand during trial, and when trial counsel began questioning him, he said that he no longer wished to testify;

(o) As Mr. Gottlieb explained, Jones then said he wished to represent himself:

> He came off the stand, we conducted another colloquy and at that time, he told the Court he wished to represent himself. The case closed and Mr. Jones made the closing argument to the jury. Your Honor at that time asked would I stay at defense counsel table and I said sure.

N.T. 7/27/07 at 4-5;

(p) When the Court asked Jones if he wished for Mr. Gottlieb to speak on his behalf during the sentencing hearing, Jones declined, id. at 6;

(q) As the transcript of the sentencing hearing reveals, when the trial court advised Jones of his appeal rights, he seemed uninterested in taking an appeal:

> THE COURT: Do you understand that if you wish to file an appeal, you have to do so within 30 days.
> Do you understand that, Mr. Jones?
>
> THE DEFENDANT: I'm reading.

5

THE COURT: Let me explain a little bit about it. Do you understand --

THE DEFENDANT: I heard what you said.

THE COURT: -- that you have to file your appeal within 30 days?

THE DEFENDANT: Yes.

THE COURT: There are other detailed instructions that I'm giving you in writing so that you will be on notice of your appeal rights, do you understand that []?
Do you wish Mr. Gottlieb to file an appeal for you?

THE DEFENDANT: I don't even give a fuck. Fuck you. Fuck everybody. Fuck all y'all. Fuck all y'all.

. . .

THE COURT: Mr. Jones, do you understand that Mr. Gottlieb is still your advisory counsel and that if you want, he will perfect an appeal for you?

THE DEFENDANT: Miss, I don't give a fuck about none of this shit no more. You just gave me life plus 12? Fuck you. Fuck this Court. Fuck everything. I don't care. I don't give a fuck what you talking about. Fuck you.

THE COURT: I don't care what you think about anything, I want to make sure you understand your rights.

THE DEFENDANT: Fuck you.

> THE COURT: I offered you to have Mr. Gottlieb
> perfect your appeal.  If you want him to do
> that, tell him now or contact him later.  You
> can file your own appeal.
>
> THE DEFENDANT:  Fuck all y'all.

N.T. 7/27/07 at 20-22;

(r) Thus, though Jones argues that "[a]fter a man being given a life sentence and never ask the trial counsel to appeal his case sounds strange", Pet. Obj. at 2, that scenario is more plausible in light of what Jones's sentencing transcript reveals;

(s) In contending that he asked Mr. Gottlieb to file an appeal on his behalf, Jones objects that Judge Hart failed to consider that "Petitioner had previously expressed his desire to contest the verdict if found guilty and that it was very unclear whether or not the Petitioner was clear about his appellate rights given his state of mind during sentencing", Pet. Obj. at 3;

(t) Jones received a copy of his appellate rights during his sentencing, so he could have revisited them within the thirty-day window, and if he had previously asked his attorney to file an appeal -- a contention for which he provides no support -

7

- he did not renew this request when he was sentenced despite the Court's repeated invitations to do so;

(u)  Moreover, Judge Hart noted that though Jones "claims that once he discovered that his attorney had not filed a direct appeal he filed a PCRA petition", Pet. at 14, the record does not support this contention;

(v)  Jones says that he received "proof of his claim" that his attorney failed to file an appeal when he contacted the trial court on December 17, 2007, Pet. at 14;

(w)  This was within the one-year limit, but Jones nevertheless failed to file a PCRA petition until over a year and a half later, on June 10, 2009;

(x)  Judge Hart thus concluded that equitable tolling was inappropriate because "Jones has not demonstrated that he acted with due diligence in bringing his claims," and because "[t]here is no indication, that he was actively misled by the defendant, that he was prevented from filing this petition, or that he mistakenly filed in the wrong forum", R&R at 6-7;

(y)  We agree, and Jones's objections, which we discussed above, do not convince us otherwise;

(z) On August 9, 2013, Jones filed a second objection in which he asserted a claim of actual innocence;

(aa) Though that objection was untimely, we will address it here;

(bb) In his second objection, Jones argues that "a convincing showing of actual innocence enable[s] habeas petitioners to overcome a procedural bar to consideration on the merits of their constitutional claims", Second Pet. Obj. at 2;

(cc) Though it is true that a showing of actual innocence enables a habeas petitioner to "have his otherwise barred constitutional claims heard on the merits", Herrera v. Collins, 506 U.S. 390, 404 (1993), Jones misunderstands the nature of the evidence required for a showing of actual innocence;

(dd) As the Supreme Court explained in Herrera, "the threshold showing" to pass through the procedural gateway "would necessarily be extraordinarily high", id. at 417, and in Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court described the Herrera standard as requiring that "new facts unquestionably establish [petitioner's] innocence", id. at 317;

(ee) Here, Jones says that his

> claim of actual-innocence comes from the only
> eyewitness giving two different stories on the
> description of the shooter during trial, in
> which the description of the shooter fits the
> description of the guy who lost the ring 'ED'.
> If petitioner['s] trial counsel had spoke to
> him before trial he would have been able to
> present the petitioners alibi which places him
> in the Southwest section of Philadelphia
> during the time this crime was being
> committed.

Second Pet. Obj. at 2;

(ff) Jones's argument regarding the eyewitness evidence introduced at trial does not constitute a new fact;

(gg) Furthermore, where Jones himself made the closing argument to the jury, see N.T. 7/27/07 at 4, we see no reason why he could not have presented his alibi argument to the jury during his closing statement;

(hh) Neither Jones's argument regarding the evidence introduced at trial nor his unsupported allegation regarding his alibi amount to new facts unquestionably establishing his innocence;

(ii) As the Supreme Court recently emphasized in McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court

that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt'", id. at 1928 (quoting Schlup, 513 U.S. at 329);

(jj) McQuiggin clarified that "a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown", id. at 1928;

(kk) Here, particularly in light of the five-year delay between Jones's sentencing and his assertion of an actual innocence claim, and because that claim does not rest on new facts unquestionably establishing his innocence, Jones has failed to meet the standard for an actual-innocence gateway claim;

(ll) Finally, Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit provides that "at the time a final order denying a habeas petition . . . is issued, the district court judge will make a determination as to whether a certificate of appealability should issue";

(mm) Such a certificate should issue only if the petitioner demonstrates that "reasonable jurists could debate" whether the petition states a valid claim for the denial of a

11

constitutional right, Slack v. McDaniel, 529 U.S. 473, 484 (2000), and because the claims here were dismissed on procedural grounds, Jones bears the additional burden of showing that reasonable jurists would also debate whether the procedural ruling was correct, id.; and

(nn) We do not believe that reasonable jurists could debate the conclusion that Jones's petition was not timely filed and that neither statutory tolling nor equitable tolling were warranted, and so we decline to issue a certificate of appealability;

It is hereby ORDERED that:

1. Petitioner's objections (docket entries # 12 & 13) are OVERRULED;

2. Judge Hart's April 2, 2013 report and recommendation (docket entry # 11) is APPROVED and ADOPTED;

3. For the reasons stated in (ee) above, we DECLINE to issue a certificate of appealability; and

4. The Clerk of Court shall CLOSE this case statistically.

BY THE COURT:

/s/ Stewart Dalzell, J.